**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SABRINA HARE, *et al.*,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) **CIVIL ACTION NO. 1:20-CV-209-JB-C** |
| **ALLSTATE PROPERTY and CASUALTY** | ) |
| **INSURANCE COMPANY, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter is before the Court on Plaintiffs Sabrina Hare (individually and as mother and next friend of C.F., a minor) and Robert Fell's (collectively "Plaintiffs") Motion to Remand (Doc. 9). The parties have briefed the issue and appeared for oral argument. The Motion to Remand is ripe for review.

## I.    FACTUAL BACKGROUND

This cause of action stems from an automobile accident that occurred in Baldwin County, Alabama. (Doc. 1-1, ¶10 at PageID.24). On August 4, 2019, Plaintiff Sabrina Hare ("Hare") was driving a 2009 Mercury Grand Marquis owned by her grandparents, Lemuel and Debbie McGlothren ("policyholders" or "McGlothrens"), which was insured under a policy held by the McGlothrens and underwritten by Defendant Allstate Property and Casualty Insurance Company ("Allstate"). (Doc. 1-1, ¶4 at PageID.23; Doc. 1-3 at PageID.59 – 101). The policy classified Hare as a "listed driver." (Doc. 1-3 at PageID.68). At the time of the accident, Hare was pregnant with C.F. and Plaintiff Robert Fell ("Fell") was in the front passenger seat of the vehicle. (Doc. 1-1, ¶12 at PageID.24). When Hare reached a stop sign at Greeno Road, another driver ("tortfeasor")

collided with the rear end of the Grand Marquis, injuring Hare and Fell.  Hare went into premature labor due to this accident.  (Doc. 1-1. ¶14 at PageID.24).

On November 7, 2019, Plaintiffs' counsel sent a letter of representation to Allstate requesting a copy of the declarations page of the McGlothrens' policy.  (Doc. 1-1, ¶15 at Page ID.24).  Four days later, on November 11, 2019, Plaintiffs' counsel sent Allstate a letter notifying the company that tortfeasor's insurance carrier offered Plaintiffs a policy limits settlement and requested approval to accept the settlement offer.  (*Id.* at ¶¶16, 18).  Plaintiffs also sought the policy limits offered in the McGlothrens' policy.  On November 15, 2019, Allstate insurance adjuster David Hill ("Hill") contacted Plaintiffs' counsel and informed counsel's employee, Stacie Thornbill, that the McGlothrens' policy provided no medical coverage for automobile accidents. (Doc. 1, ¶24 at PageID.9).  During the conversation, Hill stated the following regarding the McGlothrens' declaration page:

> Thornbill:  "She [Plaintiffs' counsel] was looking for the declaration page as well."
>
> Hill: "Yes, it generally takes me about five business days, so she could probably have it printed – it would probably be more efficient for her to just call the agent and he could just fax that over to her immediately.  And the agent is John Holleman.  And that's H-O-L-L-E-M-A-N, Holleman.  His telephone number is [redacted].  Yeah, he could get that declaration page to you a whole lot faster.  We have to put in a task and add it to the file and document it and mail it. They could probably just fax it a little quicker.

(Doc. 8).

On November 20, five days after Hill's phone call, Plaintiffs' counsel sent Holleman an email requesting a copy of the McGlothrens' declarations page.  (Doc. 1, ¶27 at PageID.25). Holleman did not sell the McGlothrens their policy; the record reveals he had no prior dealings

with them.  (Doc. 1-3, ¶2 PageID.56).  Rather, Holleman purchased a book of business from another agent which contained the McGlothrens' policy.  (*Id.*).  Similarly, Holleman had no contact from Plaintiffs before November 20, 2019.  Plaintiffs' counsel provided no form of authorization from the McGlothrens acquiescing to Plaintiffs' request for the declarations page. (*Id.*, ¶4).  The next day, Holleman contacted his Allstate advocate, Tiffany Currie, who assured Holleman she would handle Plaintiffs' request.  (*Id.*).  Holleman never provided the declarations page to Plaintiffs or contacted Plaintiffs' counsel.  (Doc, 1-1, ¶35 at PageID.26).  One month after contacting Holleman, Plaintiffs received the declarations page from Hill.  (Doc. 1-1, ¶34 at PageID.26).

Plaintiffs sued in the Baldwin County Circuit Court in March 2020, alleging four causes of action against Allstate, Hill and Holleman.  Plaintiffs allege Holleman fraudulently suppressed the declarations page Plaintiffs sought from Allstate.  Specifically, Plaintiffs allege: "John Holleman, acting within the line and scope of his employment as an agent, employee, and/or servant for Allstate, assisted in the fraudulent scheme by concealing the documents needed by Plaintiffs to see they had substantial UIM coverage for the accident made the basis of this litigation."  (Doc. 1-1, ¶ 61 at PageID.31).

Allstate removed this action on April 6, 2020, contending this Court has subject matter jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446.  (*See* Doc. 1).  Allstate contends Holleman is fraudulently joined, as Plaintiffs have no reasonably possible claim against him because Holleman owed Plaintiffs no duty to disclose the McGlothrens' declaration page as they had no relationship to one another.  (Doc. 1, PageID.13 – 17; Doc. 13, PageID.171 – 173).

Plaintiffs contend Holleman owed Plaintiffs a duty and raise various theories which they allege bound Holleman to disclose the McGlothrens' declarations page.  Plaintiffs argue: (1) Hare and Holleman had a relationship which necessitated disclosure because she was a "listed driver" under the McGlothrens' policy; (2) Plaintiffs qualified as insureds under the policy which created a relationship with Holleman and imposed upon him a duty to disclose; (3) Plaintiffs specifically requested the declarations page from Holleman which imposed upon him a duty to disclose; (4) Allstate specifically delegated its duty to disclose to Holleman; and (5) Holleman had the apparent authority to disclose the declarations page based on Allstate's representations.   (Doc. 9, PageID.139 – 142; Doc. 14, PageID.184 – 188).  Considering Plaintiffs have a reasonably possible claim, they contend, Holleman was not fraudulently joined and remand is proper.  The ultimate issue before the Court is whether Holleman is fraudulently joined.

## II.    STANDARD OF REVIEW

"In a removal case alleging fraudulent joinder, the removing party has the burden of proving that . . . there is no possibility the plaintiff can establish a cause of action against the resident defendant."  *Pacheco de Perez v. AT& T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) (citation omitted); *see also Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) ("To establish fraudulent joinder, the removing party has the burden of proving by clear and convincing evidence that . . . there is no possibility the plaintiff can establish a cause of action against the resident defendant") (citation and internal quotation marks omitted).

The party alleging fraudulent joinder shoulders a heavy burden.  *See Pacheco de Perez*, 139 F.3d at 1380.  "If there is even a possibility that a state court would find that the complaint states a cause of action against . . the resident defendant[], the federal court must find that the

joiner was proper and remand the case to the state court." *Stillwell*, 663 F.3d at 1333 (citations omitted).  The fraudulent joinder standard differs significantly from, and is less stringent than, the *Twombly/Iqbal* plausibility test that governs motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See McKenzie v. Janssen Biotech Inc.,* 2017 WL 2670738, *4 (S.D. June 21, 2017).  While *Twombly* "asks for more than a sheer possibility that a defendant has acted unlawfully, . . . all that is required to defeat a fraudulent joinder claim is a possibility of stating a valid cause of action." *Stillwell*, 663 F.3d at 1333 (citations omitted).

Where the Court sits in diversity jurisdiction, courts apply state substantive law.  *See Martin Marietta Materials, Inc. v. Limestone Redbay, Inc.*, 2017 WL 3444738, *4 (N.D. Ala. June 30, 2017) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 74 – 77 (1938)); *Vacation Break U.S.A., Inc. v. Mktg. Response Grp.*, 189 F.R.D. 474, 478 (M.D. Fla. 1999) (citing *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1296 (11th Cir. 1999)), *distinguished on other grounds.*  Where a plaintiff fails to satisfy an essential element of her *prima facie* case, there can be no possible claim against that defendant and a finding of fraudulent joinder is appropriate.  *See, e.g., Clemmons v. Twin City Fire Ins. Co.*, 2013 WL 12156033, *3 (N.D. Ala. December 3, 2013) (finding fraudulent joinder where the plaintiff could not establish an essential element of her tortious interference with a business relationship claim).

### III.    DISCUSSION

#### A.    Holleman did not owe Plaintiffs a duty under the *Walden* test.

The statute giving rise to Plaintiffs' fraudulent suppression claim provides: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud.  The obligation to communicate may arise from the confidential relations of the parties or from the

particular circumstances of the case."  Ala. Code § 6-5-102;  *see also Ex parte Walden*, 785 So. 2d 335, 338 (Ala. 2000).  Alabama law provides a fraudulent suppression claim lies only where a plaintiff can demonstrate:  (1) that the defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act; and (4) that the defendant's action resulted in harm to the plaintiff.  *See Ex parte Walden,* 785 So. 2d at 338; *Booker v. United Am. Ins. Co.*, 700 So. 2d 1333, 1339, (Ala. 1997) (citing *Interstate Truck Leasing, Inc. v. Bender*, 608 So. 2d 716 (Ala. 1992)).

Generally, an insurance agent's duty does not exceed the procurement of requested insurance unless a plaintiff can show a confidential relationship or special circumstances giving rise to more.  *See Goostree v. Liberty Nat'l Life Ins. Co.*, 2019 WL 2501888, *5 (N.D. Ala. June 17, 2019) (citing *Somnus Mattress Corp. v. Hilson,* 280 So. 3d 373, *381 (Ala. 2018) "[Insurance agents] generally are not liable for actions other than obtaining insurance coverage for their insureds unless a special relationship has been established between the parties."); *Hardy* v. *Blue Cross & Blue Shield*, 585 So. 2d 29, 32 (Ala. 1991) (stating an insurance agent may have a duty to disclose where a plaintiff demonstrates a confidential relationship or special circumstances); *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 842 (Ala. 1998) ("In the first instance, the obligation to communicate could arise from the confidential relations of the parties.").

Alabama law directs courts to examine six (6) factors when determining whether a party had a duty to disclose: (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact alleged to have been suppressed; (4) the plaintiff's opportunity to ascertain that fact; (5) the customs of the particular trade; and (6) other relevant circumstances.  *See Ex parte Walden*, 785 So. 2d at 339 (citing *State Farm Fire & Cas. Co. v. Owen*,

729 So. 2d 834, 840 (Ala. 1998)).  Alabama courts have stated a duty to disclose may arise when one party directly requests information from another in certain contexts.  *See Aliant Bank v. Four Star Invs., Inc.,* 244 So. 3d 896, 931 (Ala. 2017) (citing *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954 – 55 (Ala. 1995)); *Bulger v. State Farm Mut. Auto. Ins. Co.*, 658 So. 2d 425, 426 (Ala. 1995).  However, "the primary factor to be considered when determining whether a duty to disclose exists is the nature of the relationship between the parties."  *Aliant*, 244 So. 3d at 931. (citing *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So. 2d 665, 677 (Ala. 2001)).

Plaintiffs do not travel under a theory that Holleman had a duty to disclose because he and Plaintiffs had a confidential relationship.  Rather, Plaintiffs contend they and Holleman had a relationship which imposed a duty to disclose upon the latter, given this case's particular circumstances.  (*See* Doc. 9, PageID.138 – 140; Doc. 14, PageID.183 – 184).[1]  Plaintiffs arguments are addressed below.

### 1.    The parties' relationship

As noted *supra*, Plaintiffs posit two theories they contend demonstrate they and Holleman had a relationship satisfying the first *Walden* factor.  First, Plaintiffs contend the parties had a relationship because Hare is a listed driver on the McGlothrens' policy.  (*See* Doc. 1-3 at PageID.68).  Because of this, Plaintiffs contend, it is likely that Holleman experienced financial gain from Hare's presence on the policy, imposing an obligation upon him to disclose the declarations page.  To reiterate, Plaintiffs' position here is that Holleman had a duty to disclose

---

[1] Plaintiffs present several theories which they contend requires the Court find Holleman owed them a duty to disclose as discussed *infra*.  However, Plaintiffs' first two arguments deal squarely with the "relationship" factor of the *Walden* test.

the McGlothrens' declarations page because Holleman is "responsible for [the McGlothrens'] policy" which includes Hare as a "listed driver."  Because Holleman is "responsible" for the McGlothrens' policy, he has likely been compensated for it.  This compensation created a relationship between Plaintiffs and Holleman, imposing a duty to disclose the declarations page upon the latter.  (Doc. 9, PageID.140).  Alternatively, Plaintiffs contend Hare's status as an "insured" under the McGlothrens' policy automatically established a relationship between she and Holleman.  (*Id*.).  Because they are "insureds" under the policy, a relationship imposing a duty to disclose attached to Holleman regardless of any previous lack of contact.

In response, Allstate contends Plaintiffs and Holleman had no contact before November 2019, and therefore, had no relationship.  Further, Allstate contends, Holleman did not sell the McGlothrens' insurance policy Plaintiffs allege supports their relationship.  Allstate also encourages the Court to disregard Plaintiffs' arguments as, it contends, Plaintiffs cited no legal basis supporting them.  (Doc. 13, PageID.173).

Thus, the court is confronted with two questions: (1) does a party's presence on an insurance policy (where they are not the policyholder), without more, confer a relationship between she and an insurance agent imposing a duty to disclose on the latter; and (2) does a party's status as an "insured" following an accident confer a relationship between the "insureds" and an agent imposing a duty to disclose on the latter where the parties had no previous contact. The Court finds a relationship does not exist in either context.

The pleadings and undisputed record shows Holleman had no contact with Plaintiffs before their request for the declarations page.  In short, they had no relationship before Plaintiffs' accident and no contact before November 19, 2020.  The Court is not willing to fashion a

relationship between the parties simply because Hare was a "listed driver" under the McGlothrens' policy when Plaintiffs never met nor spoke to Holleman, Holleman did not sell the McGlothrens' policy, and precedent does not suggest the Court must reach a different conclusion.[2]

---

[2] The cases the parties rely upon reflect the general absence of guidance from Alabama courts on this particular issue.  For instance, both parties rely upon *Owen* to formulate the test for determining whether the Court should find a duty, but *Owen* fails to address the factor of the parties' relationship.  Instead, that court focused on the parties' respective knowledge, the appellee's ability to ascertain the information, and most significantly, on other circumstances:

> Owen was an educated woman, holding both an undergraduate and a graduate degree.  She did not come to the table without any knowledge of insurance practices.  We recognize the fact that State Farm had superior knowledge of its methods of computing premiums and obtaining replacement items. But in practically any transaction, particularly those involving specialized areas like insurance, one party will have greater knowledge than the other. While that factor should be important,  it should not be dispositive. . . . Rather, State Farm's superior knowledge as to its procedures and practices should be balanced with other considerations. One of those other considerations is the other party's opportunity to ascertain the fact. There was no evidence that Owen inquired into State Farm's ratemaking procedures or its replacement services. Indeed, she could not recall having read her application and apparently did not read her policy until litigation began. In the absence of an inquiry, we cannot say that she had no opportunity to learn about how her premium would be computed. . . . Most important, Owen's application clearly stated that in the event of a loss State Farm had the option to repair or to replace Owen's ring and that it would pay no more than its replacement cost. . . .  To uphold Owen's claim, we would have to rule that it is the responsibility of every insurer at the point of sale to explain fully to potential customers the insurer's internal procedures, its ratemaking process, and its business practices. To impose that responsibility strikes us as highly impractical, and it is a responsibility we have not imposed in the past.

*State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 843 (Ala. 1998) (internal citations and quotation marks omitted).  Similarly, the *Hardy* decision, discussed *infra*, does not state with any particularity what reviewing courts should examine when determining whether a relationship necessitating disclosure existed between the parties.  Rather, that court focused on whether "special circumstances" existed between the parties and the parties' relative knowledge.  *See Hardy v. Blue Cross & Blue Shield*, 585 So. 2d 29, 32 (Ala. 1991).  After a survey of available case law, it appears that in each instance where a claim was brought against an insurance company (none of the plaintiffs attempted to sue the individual agent), the plaintiffs had at least some previous contact with the agency before courts were willing to find a relationship existed.  *See Bulger v. State Farm Mut. Auto Ins. Co.*, 658 So. 2d 425, 526 (Ala. 1995) (plaintiff had previous contact with adversarial insurance company via settlement negotiations); *Ex parte Alfa Mut. Fire Ins. Co.*, 742 So. 2d 1237 (Ala. 1999) (plaintiff had previous dealings with agent of company she alleged to have fraudulently suppressed policy's contents); *Hanks v. Alfa Mut. Ins. Co.*, 753 So. 2d 1161, 1163 – 1164 (Ala.

Further, the Court is not persuaded Plaintiffs were "insureds" because Hare was a "listed driver" under the policy and each were involved in the accident giving rise to this suit, thus creating a relationship between Plaintiffs and Holleman.  Rather, Hare's "listed driver" status, which distinguishes her from the named insureds on the policy, demonstrates she was not an "insured" under the policy.  The "UIM" definitions section of the policy (Doc. 1-3 , PageID.80) upon which Plaintiffs rely, is distinct from the named insureds of the policy.  (Doc. 1-3, PageID.67).  The "named insureds" in the policy were Hare's grandparents, not Plaintiffs.  Alabama courts have found Plaintiffs' argument unpersuasive, and the Court agrees with those authorities.  *See Progressive Specialty Ins. Co. v. Naramore*, 950 So.2d 1138, 1141 (Ala. 2006) (finding the appellee's contention that a "listed driver" was a "named insured" unpersuasive: "The fact that the Progressive policy distinguishes the named insured from the named insured's spouse in its definition of 'you and your' shows that the two are different.  **This distinction is underscored by the specific identification of Stephanie on the declarations page as the named insured and Stephen as a 'listed driver.'** We answer the first question in the negative; we hold that Stephen cannot be considered a named insured under the insurance policy by virtue of being the spouse of the named insured living in the same household.") (internal citations omitted, emphasis added); *Beeman v. ACCC Insurance Company*, 283 So.3d 1235, 1239 (Ala. Civ. App. 2019) (finding appellee's reliance on definitions in UIM section to demonstrate he was an insured unpersuasive).  Given the absence of contact between the parties and Alabama precedent, the

---

1999) (plaintiff had several previous dealings with insurance agent involved in alleged suppression); *Wolff v. Allstate Life Ins. Co.,* 985 F.2d 1524 (11th Cir. 1993) (plaintiff alleging fraudulent suppression had previous contact with agent and agent knew of "special circumstances" because, *inter alia*, plaintiff was in the room when her husband discussed coverage options with said agent).

Court is satisfied that no relationship existed between Plaintiffs and Holleman. *See Aliant,* 244 So.3d at 931 (emphasizing that a duty to disclose, absent the most extreme special circumstances, will not be imposed upon a party who has no previous relationship with the other).

### 2.   The Relative Knowledge of the Parties

The relative knowledge of the parties is clear.  Plaintiffs did not know the particulars of the McGlothrens' policy while Allstate held the declarations page in its information systems. Plaintiffs conclude Holleman had superior knowledge because he inherited the McGlothrens' policy, and Holleman has provided no argument to rebut Plaintiffs' assertion here.  This factor supports a finding of a duty to disclose.

### 3.   The Value of the Allegedly Suppressed Fact

The parties agree that the value of the knowledge allegedly suppressed here is substantial. (Doc. 1, ¶12 PageID.6; Doc. 1-3, PageID.94; Doc. 9, PageID.136; Doc. 14, PageID.188). This factor cuts in favor of finding a duty to disclose.

### 4.   Plaintiffs' Opportunity to Ascertain the Facts

Plaintiffs contend the Court should find this factor favors the finding of a duty because "Defendants were the only ones with the information so the Plaintiffs had no ability to obtain the information without providing it."  (Doc. 14, PageID.189).  However, this conclusion does not tell the whole story.  There were two parties to this contract:  Allstate and the McGlothrens.  That the McGlothrens could not locate their copy of the policy and inform Plaintiffs of the full coverage available cannot serve as the genesis of a duty for Holleman to turn over the declarations page. Thus, this factor weighs against a finding of a duty to disclose.

### 5.      Particular Customs of the Trade

During oral argument, Plaintiffs' counsel confirmed the ordinary customs of the particular trade, noting that, in his nearly two decades of practice, this was the first instance where he sued an insurance agent for failing to return a declarations page.  This uncommon practice – a request for a declarations page to an insurance agent – is indicia that the customs of the trade do not traditionally require disclosure in such circumstances.  This factor suggests the absence of a duty to disclose.

### 6.      Other Relevant Circumstances

The Court does not doubt, as Plaintiffs suggest, there is a plethora of circumstances which a court might consider when determining whether an insurance agent owed a duty to disclose. After reviewing Alabama precedent, the Court notes those decisions have generally failed to parse out what those circumstances might be.  However, the Alabama Supreme Court's decision in *Owen* reveals that Court's skepticism in finding a duty to disclose where: (1) no precedential authority prescribed it, and (2) the imposition of such would be highly impractical such that it would effectively "re-write" industry standards.  *See Owen*, 729 So. 2d at 843 (Ala. 1998).  The Court finds these to be pertinent factors in this case.  As noted *supra*, neither the parties nor the Court located authority indicating an insurance agent had to disclose where a plaintiff was a "listed driver" or where an "insured" requested a copy of a policy's declarations page and the parties had no previous contact.  Similarly, the practices of this trade rarely require plaintiffs to contact local agents to acquire such information.  As no Alabama case law speaks to these issues and the customs of the insurance trade would be fundamentally altered, the Court finds that it

would be "highly impractical" to impose such a "responsibility" here.  *See Owen*, 729 So. 2d  at

843.

> **B.      Plaintiffs' request for the declarations page did not establish a duty to disclose.**

Plaintiffs contend that, should the Court find their above arguments unpersuasive, and it

does, a duty to disclose arose when Plaintiffs requested the declarations page from Holleman.

(Doc. 15, PageID.185).  Plaintiffs dissect three (3) Alabama Supreme Court cases cited by Allstate,

which they claim actually stand for the proposition that a duty to disclose arises, regardless of

other circumstances, when particular information is specifically requested of an insurance agent.

(Doc. 14 at 5 – 7).  Though the Court recognizes a specific request may trigger a duty in certain

circumstances, *see Aliant,* 244 So.3d at 931, Plaintiffs' argument here is unpersuasive.

Plaintiffs first contend the Eleventh Circuit's analysis in *Clay v. Equifax, Inc.*, 762 F.2d 952

(11th Cir. 1985) warrants a finding that Holleman owed Plaintiffs a duty to disclose because Plaintiffs

specifically requested the declarations page from "the only entity that could provide" it.  (Doc.

14, PageID.184).  In *Clay*, the plaintiff sued three insurance agencies and Equifax for defamation

and Fair Credit Reporting Act violations. *Clay*, 762 F.2d at 954.  Plaintiff received disability benefits

from the three insurance carriers, and those companies, suspicious of plaintiff, hired Equifax to

investigate the plaintiff's conduct. *Id.* Equifax's reports suggested plaintiff was homosexual, a

drug dealer, and a lazy attorney.  *Id.* at 955.  The plaintiff eventually called Equifax to ask if Equifax

was investigating him and received a non-response from the receptionist with whom he spoke.

*Id.*

Ultimately, the court found the plaintiff failed to satisfy his burden of establishing facts

which demonstrated the defendants fraudulently concealed Equifax's reports, *Id.* at 961, and

affirmed the district court's opinion.  In doing so, the court emphasized the plaintiff's failure to

demonstrate a relationship which would require disclosure, highlighting the inapplicability of the

plaintiff's cited precedent:

> In a case relied on by Clay, the Supreme Court of Alabama held that
> "to establish fraud by silence, facts should be averred from which
> a duty to speak arises – it should appear that the parties were not
> dealing at arms length." *Tonsmeire v. Tonsmeire*, 285 Ala. 454, 233
> So. 2d 465, 468 (1970).  Although we recognize that insurers owe a
> duty of good faith to their insureds, we do not believe that duty is
> equivalent to the confidential relationship envisioned by the
> Alabama courts in these circumstances.

*Clay,* 762 F.2d at 961.  Notwithstanding the Alabama Supreme Court's holding in *Aliant*, Plaintiffs'

attempt to impose a duty on Holleman by virtue of their specific request for the declarations

page in light of *Clay* is unpersuasive.  Though Plaintiffs argue that, unlike the plaintiff in *Clay*, they

specifically requested the declarations page from Holleman, that was not the prescient issue in

*Clay.*  Rather the *Clay* decision analyzed whether the plaintiff and the insurance agencies shared

a confidential relationship.  Though Plaintiffs also argue here that Allstate was the only party with

the information needed, (Doc. 14, PageID.185), this raises an argument on an entirely separate

*Walden* factor discussed *infra.*

The Court also finds Plaintiffs' arguments concerning  *Ex parte Alfa Mut. Fire Ins. Co.*, 742

So. 2d 1237 (Ala. 1999)[3]  and *Hardy* unpersuasive.  Plaintiffs rely on the former decision for the

proposition that whether "an agent owes a duty to an insured and the extent of that duty is

factually dependent on each case."  (Doc. 14, PageID.186).  This principle is uncontroversial

---

[3] Cited as *Alfa Mut. Fire Ins. Co. v. Payton*, 742 So.2d 1237 (Ala. 1999)  (*See* Doc. 14 at PageID.185).

insofar as Alabama law requires courts to examine the particulars of a dispute and decide, as a matter of law, whether a duty existed.  *See Ex parte Alfa Mut. Fire Ins. Co*., 742 So. 2d 1237, 1243 (Ala. 1999) (citing *Owen*, 729 So. 2d at 834 (Ala. 1998)). But, to go to Plaintiffs' requested next step, i.e., to find a relationship between the parties which imposes a duty upon Holleman simply because Plaintiffs' counsel requested the declarations page, is untenable.  This is clear, given *Hardy.*

Plaintiffs cite *Hardy* for the proposition that a specific request for information creates a duty to disclose, and although this point has been acknowledged by other courts, *see, e.g., Bulger*, 658 So. 2d at 425; *Hanks*, 753 So. 2d at 1163, the Court cannot make such a finding under the facts of this case.  In each case cited, the plaintiff alleging fraudulent suppression and a duty to disclose had previous contact with the entity they alleged had such a duty, as noted *supra*. Based on these authorities, a duty to disclose is not imposed where the party had absolutely no previous contact with the agent upon whom they seek to impose a duty.

### C.    Allstate did not "delegate" its duty to Holleman.

Plaintiffs also contend Allstate delegated its duty to disclose to Holleman.  (Doc. 14, PageID.187).  However, a closer reading of Plaintiffs' argument here shows they contend Hill's representation to Plaintiffs' counsel demonstrated apparent authority by Allstate.  (*Id.*). ("While there is no case law that Plaintiffs can find on this specific issue, Alabama law does have a doctrine of apparent authority that is relevant here.").  Specifically, Plaintiffs contend that because Hill "specifically told Plaintiffs to obtain the requested information" from Holleman, Allstate evinced apparent authority in Holleman.  (Doc. 14 at PageID.188).  To support their position that Holleman was bound by a duty to disclose the declarations page, Plaintiffs cite the phone call Hill

placed to Plaintiffs' counsel's office and the Alabama Supreme Court's decision in *Northington v. Dairyland Ins. Co.* 445 So.2d 283 (Ala. 1984).  Under Alabama law, "[t]he doctrine of apparent authority is based on the principal's holding the agent out to a third person as having the authority under which he acts, and the doctrine can be invoked by one who has been misled to his detriment." *Rosser v. AAMCO Transmissions, Inc.,* 923 So.2d 294, 301 (Ala. 2005) (citations and internal quotations omitted). The critical point is that "[a]n agent's apparent authority must be founded upon the conduct of the principal and not upon the conduct of the agent." *Alexander v. Burch,* 968 So.2d 992, 996-97 (Ala. 2006)  (citation omitted); *see also Kennedy v. Western Sizzlin Corp.,* 857 So.2d 71, 77 (Ala. 2003) ("Apparent authority is inferred from the conduct of the principal.").  Apparent authority may be conferred by both acts and omissions of the principal, and apparent authority may be found to exist "where the principal passively permits the agent to appear to a third party to have the authority to act on his behalf." *Cook's Pest Control v. Rebar,* 852 So.2d 730, 738 (Ala. 2002).  In other words, the Court may only find apparent authority where a principal holds out an agent to a third party as possessing the authority to perform a given action – it is not dependent upon the principal's representations of authority to said agent.  *See General American Life Ins. Co. v. AmSouth Bank,* 100 F.3d 893, 898 (11th Cir. 1996) (applying Alabama law); *see also Glass,* 990 F. Supp. at 1353 ("Representations of the agent cannot be the basis for a finding of apparent authority.") (citation omitted); *Linn v. St Mobile Aero. Eng'g, Inc.*, 2008 WL 2945558, *8 (S.D. Ala. July 25, 2008).

The contents of Hill's phone calls are detailed *supra*.  (Doc. 8).  Assuming *arguendo* an insurance adjuster can confer apparent authority upon an insurance agent (a proposition for which this Court could find no precedent), the contents of this conversation fail to show Holleman

16

was "delegated" the authority to turn over the McGlothrens' declarations page to Plaintiffs or that Hill "specifically told Plaintiffs to obtain the requested information" from Holleman.  (Doc. 14, PageID.188).  Rather, the record indicates Hill merely suggested Plaintiffs could request the declarations page from Holleman because "it would be a little quicker." (Doc. 8).  This suggestion does not indicate Holleman had to do as Hill said, nor that Allstate/Hill delegated such authority to Holleman .

Plaintiffs' citation to *Northington*, 445 So.2d 283, is unavailing.  There, an insurance agent ("Wills") received an $80.00 payment from a prospective client for an auto insurance policy.  *Northington*, 445 So. 2d at 284.  Upon receipt of the payment, Wills informed the plaintiff she was immediately covered by an automobile insurance policy.  *Id.*  After a car accident and tendering an additional $37.55, Wills informed the plaintiff she was insured by defendant Dairyland.  *Id*.  However, no policy had ever been purchased and plaintiff was not insured.  *Id*.  Plaintiff sued Dairyland, asserting breach of contract and fraud claims.  Affirming the lower court's grant of summary judgment in Dairyland's favor, the Alabama Supreme Court found the company could not be held liable for Wills' acts because he acted outside the scope of his contractually delegated authority and no apparent authority was present as Dairyland manifested no "conduct which led [the plaintiff] to believe that the agent had authority to act for the principal."  *Northington*, 445 So.2d at 286.

Plaintiffs contend the facts warrant the opposite conclusion, i.e., a finding that Holleman can be held liable based on Hill's "direct representation," because Hill led Plaintiffs to seek the declarations page from Holleman and Holleman did not provide it.  The Court is not persuaded.  Again, notwithstanding an adjuster's ability to confer apparent authority to a third party, the

representation Hill made was a suggestion that Plaintiffs might obtain the policy from Holleman faster than from Hill – not that they must obtain the policy from Holleman.

        **D.**      **Holleman was fraudulently joined.**

As noted *supra*, a finding of fraudulent joinder is appropriate when a plaintiff has no possible claim against a defendant. *See Pacheo de Perez*, 139 F.3d at 1380; *Stillwell*, 663 F.3d at 1332. Further a plaintiff has no possible claim against a defendant when she cannot establish an essential element of her claim. *See Clemmons,* 2013 WL 12156033, at *3. Considering Plaintiffs cannot establish a *prima facie* case of fraudulent suppression, Plaintiffs have no possible cause of action against Holleman. Holleman's citizenship is disregarded to determine whether the Court has jurisdiction over this action. The Court finds it has subject matter jurisdiction over Plaintiffs' remaining claims because Allstate is diverse from Plaintiffs and the amount-in-controversy exceeds $75,000.

<b>CONCLUSION</b>

For the reasons stated herein, Plaintiffs' Motion is **denied** and Plaintiffs' claims against Defendant Holleman are **dismissed** with prejudice.

**DONE and ORDERED** this 22nd day of September, 2020.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE